THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT DAVID, Defendant-Appellant.

Second District  No. 84—0803

Opinion filed February 14, 1986.—Rehearing denied March 27, 1986.

Edward M. Genson and Terence Gillespie, both of Genson & Steinback, of Chicago, for appellant.

James Ryan, State's Attorney, of Wheaton (William L. Browers and Virginia M. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCHNAKE delivered the opinion of the court:

On December 9, 1983, following a jury trial in the circuit court of Du Page County, defendant, Robert David, was found guilty of unlawful possession with the intent to deliver 200 grams or more of a substance containing a derivative of barbituric acid, and was sentenced to a term of 30 years' imprisonment. On appeal defendant raises 11 issues contesting his conviction and sentence.

At approximately 6:30 p.m. on October 21, 1980, Ann Shirley, her husband, Charles Shirley, and Gene Poston, were arrested in Pontiac, after selling 6,000 phenobarbital tablets to Agent William Willis of the Illinois Department of Law Enforcement. Shortly after her arrest, Ann Shirley spoke with Agent Willis and told him that she had been present with Charles when he had picked up the 6,000 tablets. Ann stated at 4 p.m. that afternoon she had accompanied Charles to a two-story, brick front house with an attached garage in Hinsdale. They parked in front of the garage, and she stayed in the car. Charles left the car, spoke with defendant in front of the garage, and then entered the garage with defendant. When the two men exited the garage Charles was carrying a garbage bag which he put in the trunk. She and Charles then drove to Pontiac, where they transferred the bag to Poston's car and drove to where the sale took place. Ann told Agent Willis that Charles had told her that the garbage bag contained the phenobarbital and that there were two similar bags in the garbage cans in the garage. After speaking with Agent Willis, Ann drove with the agents to Hinsdale and pointed out defendant's house at 8950 South County Line Road as the place where Charles had obtained the phenobarbital.

Based upon the information obtained from Ann Shirley, Agent Willis obtained a search warrant for defendant's house and garage. The search warrant was executed in the early morning hours of October 22, 1980. After being read his *Miranda* rights and the search warrant, defendant led the agents to the garbage cans in the garage where the police found four more bottles of phenobarbital. After seizing the drugs, defendant was asked where the money was and defendant led the agents to a dresser drawer in a bedroom where the agents found $3,550. Defendant was later taken to the Du Page county jail where he told the police that part of the money belonged to Charles Shirley and part was his and that he wanted his part of the money back.

The trial against defendant began on December 13, 1982. During the morning court proceedings on December 16, 1982, Charles Shirley, who had earlier refused to testify under the fifth amend-

ment, was granted immunity and ordered to testify. Shirley was to testify starting at 2 p.m. that afternoon. Defendant did not appear for the afternoon call that day and the case was continued to 2 p.m. the following day. Defendant also failed to appear on that day. The jury returned verdicts of guilty for possession (Ill. Rev. Stat. 1981, ch. 56½, par. 1402(a)(5)) and possession with intent to deliver (Ill. Rev. Stat. 1981, ch. 56½, par. 1401(a)(5)) 200 grams or more of a substance containing a derivative of barbituric acid. On February 9, 1983, the court sentenced defendant *in absentia* to a term of 30 years' imprisonment on count II and vacated the conviction on count I as a lesser included offense. On July 29, 1984, defendant appeared before the trial court and was advised of his right to appeal. A notice of appeal was filed on August 28, 1984.

## I

■ Defendant's first argument is that the trial court erred in denying his motion for a hearing under *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674. In *Franks* the court stated:

> "[W]e hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.
>
> * * *
>
> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental inform-

ant." *Franks v. Delaware* (1978), 438 U.S. 154, 155-56, 171, 57 L. Ed. 2d 667, 672, 682, 98 S. Ct. 2674, 2676, 2684.

Defendant contends he made the substantial preliminary showing required by *Franks* based upon the grand jury testimony of Ann Shirley, which was contrary to what Agent Willis indicated she told him in his complaint for the search warrant. In his complaint for the search warrant, Agent Willis stated:

"She [Ann Shirley] stated that she remained in the car in front of the garage and observed Charles Shirley and a male/white approximately 40 years old with a heavy build known as Bob alias Bill enter the garage which is attached to the house. She observed Bob alias Bill remove a garbage bag from one of the two silver colored garbage cans in the garage."

In her testimony before the grand jury, Ann Shirley *allegedly* testified:

"Question: So then you went up—you saw him [Shirley] go up and talk to David?

Answer: Mm-hm.

Question: And what do you remember seeing happen then?

Answer: They talked for a while, and they went to the garage.

Question: *Did you see what happened in the garage?*

Answer: *No. I didn't see them.*" (Emphasis added.)

Contrary to defendant's claim that he had submitted a sworn affidavit and the grand jury testimony of the informant, the record shows that he did neither. In this motion for the *Franks* hearing defendant set out what purported to be three questions and three answers from Ann Shirley's grand jury testimony. A certified transcript from that proceeding, however, was not presented to the trial court and has not been made a part of the record on appeal; nor did defendant's motion contain any sworn affidavit. As the trial court stated at the hearing on defendant's motion:

"I do not have the original transcript of the grand jury proceedings before me.

Not only do I perceive this to be procedurally objectionable, but in addition to that it also substantively is problem-making, because the Court is unable to make any direct connection between the testimony quoted in Paragraph 4 of the motion and what might be contained elsewhere insofar as the testimony before the grand jury is concerned."

Defendant's motion, therefore, was insufficient on its face because it failed to meet the *Franks* requirement that "[a]ffidavits or sworn or

otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Franks v. Delaware* (1978), 438 U.S. 154, 171, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2684.

■■ Further, even if we were to consider defendant's uncertified and partial excerpt from Ann Shirley's grand jury testimony, we would find it insufficient to justify a *Franks* hearing. Under *Franks*, only the veracity of the affiant, and not that of the informant, may be challenged. Before the grand jury Shirley testified only that she did not see what occurred in the garage, and she did not testify as to what she did or did not tell Agent Willis. While one can infer from her testimony that *"maybe* Agent Willis just made that up" as defendant argued before the trial court, it is equally inferable that she changed her story between talking to Agent Willis and testifying before the grand jury. In light of the presumption of validity with respect to the affidavit supporting the search warrant (*Franks v. Delaware* (1978), 438 U.S. 154, 171, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2684), defendant's "maybe" is not the substantial preliminary showing required by *Franks*. Rather, under the facts of this case, where the identity of the informant was known to defendant, he was required to present direct evidence that the known informant did not make the alleged statement to Agent Willis, and not simply that the alleged statement was not true.

Defendant did attempt to explain his failure to produce such an affidavit at the July 1, 1982, hearing, stating:

"Initially, Judge, with the absence of documents ***.

*** this is a witness who the State indicated the last time that this case was up in court that they were having difficulty in finding.

So, as far as getting an affidavit from that witness, who was previously a State witness, who they indicated they were having problems in finding, I believe that accounts for the absence of her affidavit."

We find defendant's explanation insufficient for two reasons. First, at the prior hearing on April 29, 1982, the State merely requested a later court date, preferably in July, because it was feared that there might be difficulty locating its witnesses because of the type of case, the length of time the case had been pending, and the fact that many of their witnesses were now located all over the United States. The State did not say that it was having trouble locating witnesses, but only that it feared it might, nor did the State say that Ann Shirley was one of these witnesses. The State did, in fact, locate Shirley when it attempted to, as shown by the fact that she

testified at trial. Second, even if the State had had difficulty locating Shirley in April of 1982, this would not excuse defendant from using his own reasonable efforts to locate her in July of 1982.

■ Lastly, we note that defendant argues on appeal that the trial court also should have granted him a *Franks* hearing because of certain alleged omissions in the complaint for the search warrant and because of Shirley's testimony at trial that she did not tell Agent Willis that the man's name was either Bob or Bill. Defendant, however, did not make an offer of proof on either of these matters in his motion as required by *Franks v. Delaware* (1978), 438 U.S. 154, 171, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2684, and, therefore, has waived these arguments.

## II

■ Defendant's second argument is that the trial court erred in admitting evidence obtained by the search warrant because the warrant was not supported by probable cause. Defendant also argues that under *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, we must apply a three-prong test in determining whether the search warrant was supported by probable cause. Defendant explains this test, stating:

> "Accordingly, the *Gates* makes the analysis of informant information a three-step process. The first two steps are a repetition of the old *Aguilar-Spinelli* analysis. *** If the informant information passes *Aguilar-Spinelli*, then *Gates* need not be applied. If, however, the informant's tip fails either prong of *Aguilar-Spinelli*, then the third step in the analysis is the *Gates* question: are the facts presented as to one prong so overwhelming as to compensate for the weakness of the showing as to the other prong? *** [Citations.] In the case at bar, neither prong of this test has been satisfied by the search warrant and thus the search warrant is invalid as a matter of law."

Contrary to defendant's reading of *Gates*, we interpret the court's opinion as adopting a one-step totality of the circumstances test. As the court stated in *Gates*:

> "For all these reasons, we conclude that it is wiser to abandon the 'two-pronged test' established by our decisions in *Aguilar* and *Spinelli*. In its place we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations. [Citations.]" (*Illinois v. Gates* (1983), 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548, 103 S. Ct.

2317, 2332.)

Under this totality of the circumstances test "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for *** conclud[ing]' that probable cause existed." (*Illinois v. Gates* (1983), 462 U.S. 213, 238-39, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332.) We find that the trial judge did have a substantial basis for concluding that probable cause existed in this case.

■■ In his complaint for the search warrant, Agent Willis set forth the facts of his drug purchase on October 21, 1980, as well as the statements made to him by Ann Shirley. Charles' statement to Ann that there were two more bags of phenobarbital tablets in the garage, and Ann's restatement of this to Agent Willis, are both statements against the declarant's interest which carry an indicia of reliability. Charles' statement that the substance still left in the garage was phenobarbital is supported by the fact that the substance sold to Agent Willis was phenobarbital, as shown by Agent Willis' field test at the time of the sale. Further, Ann Shirley's statements and the facts supplied by Agent Willis possess an internal coherence that gives weight to the whole. *Massachusetts v. Upton* (1984), 466 U.S. 727, 734, 80 L. Ed. 2d 721, 728, 104 S. Ct. 2085, 2089.

## III

■■ ■ Defendant's next argument is that the court erred in admitting into evidence a sum of money ($3,550) that was seized in the search of his residence. Defendant contends that the money was outside the scope of the search warrant, which provided that the State could search for evidence of "possession of controlled substance (phenobarbital); to wit: quantity of phenobarbital a controlled substance and all other controlled substance paraphernalia and any other instrumental use in furtherance of possession controlled substance."

We find that defendant's argument is misplaced since the money was never offered or admitted into evidence. Further, even if we assume defendant meant to argue that the court erred in admitting testimony in regard to the money, we would find that argument waived. In defendant's post-trial motion the only alleged error involving testimony about the money concerned defendant's own "alleged volunteered statements relative to the monies" which he argued were not "voluntary" and were "in violation of the *Miranda* proscriptions." This issue, however, is specifically raised later in defendant's brief, and we find, therefore, that any additional argument defendant may have intended to make would be waived by failure to include it in his post-trial motion. *People v. Caballero* (1984), 102 Ill.

2d 23, 31-32; *People v. Pickett* (1973), 54 Ill. 2d 280, 282.

## IV

■ Defendant's fourth argument is that he was not proved guilty beyond a reasonable doubt. Defendant bases this argument on two contentions. First, he contends that since phenobarbital is specifically listed as a schedule IV substance under section 210(c)(19) of the Illinois Controlled Substance Act (Ill. Rev. Stat. 1981, ch. 56½, par. 1210(c)(19)), while other derivatives of barbituric acid are listed as schedule III substances (Ill. Rev. Stat. 1981, ch. 56½, par. 1208(d)(3)), he could not be convicted under section 401(a)(5), which involves the possession with intent to deliver 200 grams or more of "any substance containing a derivative of barbituric acid" (Ill. Rev. Stat. 1981, ch. 56½, par. 1401(a)(5)). The State does not dispute that phenobarbital is a derivative of barbituric acid, or that it is properly considered a schedule III controlled substance.

Section 401 provides, in part:

"Except as authorized by this Act, it is unlawful for any person knowingly to manufacture or deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this Section with respect to:

(a) the following controlled substances and amounts, notwithstanding any of the provisions of subsections (b), (c), (d), (e), (f) or (g) to the contrary is guilty of a Class X felony. The fine for violation of this subsection (a) shall not be more than $200,000;

\* \* \*

(5) 200 grams or more of *any* substance containing a derivative of barbituric acid or any of the salts of a derivative of barbituric acid;

\* \* \*

(e) *any other amount* of a controlled substance classified in Schedule III is guilty of a Class 3 felony. The fine for violation of this subsection (e) shall not be more than $15,000;

(f) *any other amount* of a controlled substance classified in Schedule IV is guilty of a Class 3 felony. The fine for violation of this subsection (f) shall not be more than $10,000; \* \* \*."

(Emphasis added.) (Ill. Rev. Stat. 1981, ch. 56½, par. 1401.) Defendant argues that since the legislature specifically differentiated between phenobarbital and other derivatives of barbituric acid in sections 208 and 210, section 401(a)(5) should be read as including only those derivatives of barbituric acid that are schedule III controlled

substances under section 208. This interpretation, defendant reasons, is consistent with the legislature's purpose and intent, as set out in section 100 (Ill. Rev. Stat. 1981, ch. 56½, par. 1100), of designing a schedule classification system to account for the functional and consequential differences between the various types of controlled substances and to provide for correspondingly different degrees of control over each.

We find defendant's argument to be contrary to both the stated legislative intent and the plain language of the statute. Beyond that portion of the legislative intent relied upon by defendant, section 100 also states:

"It is not the intent of the General Assembly to treat the unlawful user or occasional petty distributor of controlled substances with the same severity as the large-scale, unlawful purveyors and traffickers of controlled substances." (Ill. Rev. Stat. 1981, ch. 56½, par. 1100.)

The fact that the legislature enumerated phenobarbital as a schedule IV substance, while classing other derivatives of barbituric acid as schedule III substances, does not show that the legislature did not intend to treat large scale distributors of both drugs similarly. Further, under defendant's argument he could only be convicted under section 401(f) regardless of the amount of phenobarbital he intended to deliver. This result would be directly contrary to the stated legislative intent to treat the large scale trafficker more severely than the occasional petty distributor.

Defendant's argument is also contrary to the plain language of the statute. Section 401(a)(5) is unambiguous in that it applies to "any substance containing a derivative of barbituric acid" (Ill. Rev. Stat. 1981, ch. 56½, par. 1401(a)(5)). Also, to accept defendant's interpretation of the statute that he could only be convicted under section 401(f) would render meaningless subsection (f)'s language that it applied to "any other amount[s]" of a schedule IV substance (Ill. Rev. Stat. 1981, ch. 56½, par. 1401(f)).

Defendant also argues that the State failed to prove him guilty beyond a reasonable doubt because it failed to present any evidence that the derivative of barbituric acid in question had a depressant effect. Defendant relies on *People v. Armstrong* (1978), 65 Ill. App. 3d 680.

While we agree with the opinion in *Armstrong* that the State must prove each and every element of a crime, we do not conclude that under section 401 the State must prove that the substance had a depressant effect on the central nervous system. (*People v. Otten*

(1980), 91 Ill. App. 3d 692; *People v. Bolden* (1978), 62 Ill. App. 3d 1009.) The criminal offense charged against defendant was the unlawful possession with the intent to deliver 200 grams or more of a controlled substance containing a derivative of barbituric acid. This the State must prove beyond a reasonable doubt. (*People v. Otten* (1980), 91 Ill. App. 3d 692.) Where the substance is identified as one belonging to the group enumerated in the statute under which defendant was charged, there is no necessity of proving that it has a depressant effect on the nervous system. 91 Ill. App. 3d 692; *People v. Bolden* (1978), 62 Ill. App. 3d 1009.

■■■ Defendant's second contention is that he was not proved guilty beyond a reasonable doubt because the State failed to prove that he unlawfully possessed a controlled substance. The State must establish two elements in order to obtain a conviction for possession: first, the knowledge of the defendant of the presence of narcotics and second, his immediate and exclusive control thereof. (*People v. Bradi* (1982), 107 Ill. App. 3d 594.) Knowledge may be proved by evidence of acts, declarations or conduct of the accused from which it may be fairly inferred that he knew of the existence of a controlled substance at the place it was found. (107 Ill. App. 3d 594.) Possession may be actual or constructive and it may exist jointly with another. (*People v. Bradi* (1982), 107 Ill. App. 3d 594.) We find that the evidence clearly establishes the defendant had knowledge and constructive possession of the phenobarbital which was the basis of his conviction.

Defendant's knowledge of the drugs in the garbage cans was shown by the fact that when he was informed that the police were there to execute a search warrant, he voluntarily led the police directly to the garbage cans in the garage. Defendant argues that since the search warrant referred to the garbage cans in the garage, it is a reasonable assumption that defendant led the police to the garbage cans after being specifically asked where they were.

His argument, however, is mere speculation unsupported by the record. The testimony at trial was that the police informed defendant that they had a search warrant, that they read the search warrant to defendant, and that defendant then led them directly to the garbage cans. Contrary to defendant's argument, the search warrant did not mention the garbage cans.

■■■ Defendant's possession of the controlled substance was also shown. Where the controlled substance is found on premises under the control of defendant, this fact, in and of itself, gives rise to an inference of constructive possession by him which may be sufficient

to sustain a conviction, absent other facts and circumstances which might leave in the mind of the jury a reasonable doubt as to guilt. (*People v. Nettles* (1961), 23 Ill. 2d 306, 308-09, *cert. denied* (1962), 369 U.S. 853, 8 L. Ed. 2d 12, 82 S. Ct. 939; *People v. Bell* (1972), 53 Ill. 2d 122, 126.) In the present case the phenobarbital was found in defendant's garage, an area under defendant's control. While defendant did present evidence that others had access to the garage, this fact alone does not require a reversal of the jury's verdict. Mere access by others is insufficient to defeat a charge of constructive possession. *People v. Mack* (1957), 12 Ill. 2d 151; *People v. Brownstein* (1982), 105 Ill. App. 3d 459, *cert. denied* (1983), 459 U.S. 1176, 74 L. Ed. 2d 1022, 103 S. Ct. 826; *People v. Luetkemeyer* (1979), 74 Ill. App. 3d 708, *cert. denied* (1980), 446 U.S. 938, 64 L. Ed. 2d 791, 100 S. Ct. 2157.

Moreover, in the present case there is further corroborating evidence. After seizing the phenobarbital from the garbage cans Agent Weinstein asked defendant "where the money was," and he then led the police to the dresser in his room where the police recovered $3,550. Later, at the county jail, defendant stated that part of the money belonged to Charles Shirley and part was his. From this the jury could have inferred that defendant and Shirley were selling drugs together and that defendant at least had joint control over the phenobarbital in the garage. Further, defendant's flight immediately after Shirley had been granted immunity implies a consciousness of guilt. *People v. Terrell* (1984), 99 Ill. 2d 427, 433; *People v. Harris* (1972), 52 Ill. 2d 558, 561.

## V

Defendant's fifth argument is that he was denied his sixth amendment right to confront the witnesses against him when the court allowed several witnesses to testify as to out-of-court statements made by Charles Shirley. While defendant admits that Shirley was in court and available to testify under a grant of immunity, defendant argues that the grant of immunity was illusory because it left Shirley open to a charge of perjury if he gave testimony contrary to his prior statement in Livingston County.

We find defendant's argument unconvincing. Shirley was present in court and available to testify under a proper grant of immunity as per sections 106—1 and 106—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, pars. 106—1, 106—2). The court repeatedly instructed Shirley that all that was required of him was to testify truthfully and that any future perjury charges would have to be

based upon whether he told the truth and not merely upon whether his testimony was inconsistent with any prior statement. Defendant, having chosen not to question Shirley, cannot now claim he was denied his right to confront him.

## VI

▮▮ Defendant next contends that the court erred in admitting evidence of assertive conduct and statements obtained in violation of his fifth amendment rights and *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. Defendant's contention refers to his assertive conduct of leading the police to the phenobarbital in the garage and his statements to the police at the county jail that part of the $3,550 seized from his house was his.

The testimony at the suppression hearing showed that when the police arrived at defendant's house to execute the search warrant, Agent Saul Weinstein of the Drug Enforcement Administration read defendant his *Miranda* rights. Defendant responded that he understood his rights but did not specifically state whether he would or would not answer questions. Agent Weinstein then asked defendant to show them where the drugs were, and defendant stated the drugs were in the garage. Defendant then led the agents to the garbage cans in the garage. Based on this evidence, the Livingston County judge, hearing a motion to suppress evidence, ruled that defendant's statements were inadmissible because he did not affirmatively state that he was willing to answer questions before the police questioned him. The judge then ruled that defendant's conduct of leading the agents to the phenobarbital was admissible because it was not testimonial evidence.

Defendant's conduct of leading the police to the phenobarbital in the garage was clearly assertive conduct of a testimonial nature which falls within the ambit of the fifth amendment. (See, *e.g., People v. Hoffman* (1981), 84 Ill. 2d 480, 490.) Defendant's conduct, therefore, should have been treated the same as his statements. However, contrary to the judge's ruling, an express waiver of his right to counsel is not necessary. The test is that there be a showing of a knowing intent to speak without counsel. Once a defendant has been informed of his rights and indicates that he understands those rights, his choosing to speak and not requesting a lawyer is sufficient evidence that he knows his rights and chooses not to exercise them. (*People v. Brooks* (1972), 51 Ill. 2d 156; *People v. Eatherly* (1979), 78 Ill. App. 3d 777.) Neither defendant's statements nor his conduct, therefore, should have been suppressed, and the trial court did not

err in admitting defendant's assertive conduct into evidence.

■ Defendant also argues that his assertive conduct was involuntary and the product of coercion based upon the coerciveness inherent in an early morning raid of his home, the ill treatment afforded his family, and the fact that one of the officers accidentally discharged his gun when he slipped and fell backwards. Our review of the record, however, shows that this argument was never presented at the hearing to suppress and was, therefore, waived.

■ The Livingston County judge also allowed defendant's statements regarding the $3,550 seized from his home to be admitted based on his finding that the statements were volunteered. The evidence at the hearing showed that after defendant had been read his rights at the county jail and stated he did not wish to answer questions, Agent Weinstein asked defendant how much money he had in his possession at the time of arrest because the question was on the county booking form. Agent Christine Higgins, who was also present at the booking, gave slightly different testimony and stated that the question on the booking form was, "Amount of money at time of arrest or seized at the time of arrest," and that Agent Weinstein verified the amount. Defendant responded that the government could keep its $2,100 that he got from "Charlie," but that he wanted the rest of his money back.

We note initially that *Miranda* does not prohibit the asking of certain routine and necessary questions during the booking process. (*People v. Dalton* (1982), 91 Ill. 2d 22.) Further, defendant's statement was not a "direct response to the agent's questioning of the amount *and ownership* of the seized money," as defendant argues. There was no evidence at the hearing that any police officer asked defendant any question about the ownership of the seized money. We agree with the hearing judge, therefore, that defendant's statement as to ownership was volunteered. Volunteered statements of any kind are not barred by the fifth amendment and their admissibility is not affected by *Miranda. Miranda v. Arizona* (1966), 384 U.S. 436, 478, 16 L. Ed. 2d 694, 726, 86 S. Ct. 1602, 1630.

## VII

■ Defendant's seventh argument is that his constitutional right to remain silent was violated by a comment made by the prosecutor in his closing argument. During the prosecutor's rebuttal argument, the following occurred:

> "But, getting back to inconsistencies between witnesses, let's look at the inconsistencies, just for the sake of argument

from the defendant's own testimony, or, not the defendant's testimony—

MR. GENSON: Objection, Judge.

MR. BLOOM: Objection.

MR. KANTOR: —but the testimony—

MR. GENSON: I move for a mistrial.

THE COURT: I trust that was an error, Mr. Kantor.

MR. KANTOR: It was.

THE COURT: All right. The jury is instructed to disregard it.

        The motion for a mistrial is denied."

The prosecutor then went on to discuss the inconsistency between the testimony of defendant's son and daughter, both defense witnesses.

While defendant objected to the prosecutor's statement at trial, defendant failed to specifically raise this issue in his post-trial motion which stated only generally that the "prosecutor made prejudicial, inflammatory and erroneous statements in closing arguments." In failing to specify in any way which statements he felt were improper, defendant did not meet the requirements that the post-trial motion "shall specify the grounds therefore" (Ill. Rev. Stat. 1981, ch. 38, par. 116—1(c)). Our courts have repeatedly held such general allegations insufficient to preserve the issue on review because to do so would defeat the purpose of the post-trial motion of affording the trial court the opportunity to review and correct alleged errors that occurred at trial. *People v. Myles* (1985), 131 Ill. App. 3d 1034; *People v. Camp* (1984), 128 Ill. App. 3d 223; *People v. Strange* (1984), 125 Ill. App. 3d 43; *People v. O'Malley* (1982), 108 Ill. App. 3d 823; *People v. Smylie* (1981), 103 Ill. App. 3d 679; *People v. Turk* (1981), 101 Ill. App. 3d 522.

█ Further, in our view the statement was not error. Where, as here, a comment is argued to be an impermissible comment on defendant's right to remain silent, the appropriate test for determining whether defendant's right has been violated is whether the reference was intended or calculated to direct the attention of the jury to defendant's neglect to avail himself of his legal right to testify. (*People v. Dixon* (1982), 91 Ill. 2d 346, 350.) From the context of the argument, we find it is clear that the prosecutor simply misspoke, and that he was referring to the testimony of the defendant's own witnesses. The record demonstrates that the prosecutor did not intent or calculate to call the jury's attention to the fact of defendant's failure to testify.

## VIII

■ Defendant's eighth argument on appeal is that he was denied due process when the trial court refused to instruct the jury as per his proposed instructions. Defendant's submitted instruction No. 9 instructed the jury to consider Ann Shirley's testimony "with caution and great care" because she had pleaded guilty to a crime arising out of the same occurrence. Defendant argues this instruction was necessary because the jury should have been instructed to exercise great caution when scrutinizing the testimony of one who "is hoping" to receive leniency as to charges against her by cooperating with government agents, especially where the testimony is uncorroborated.

We find no error in refusing defendant's proposed instruction No. 9. First, Shirley's testimony connecting defendant with the phenobarbital was corroborated by the fact that the phenobarbital was found in defendant's garage and that money traceable to a prior drug sale was found in his house. More importantly, Shirley could not have been hoping to receive leniency because, as the instruction itself notes, the charges against her in Livingston County had been disposed of earlier by her plea of guilty. The jury was properly instructed that Shirley's conviction could be considered as a matter affecting her credibility.

■ Defendant's proposed instruction No. 10 stated:

"The testimony of an addict is to be scrutinized with great caution and if the jury were to find that the witness was an addict *or used narcotics at about the time of the alleged crime* such a finding would be an important factor going to the general reliability of a witness." (Emphasis added.)

We find that the trial court did not err in also refusing this instruction.

We note initially that there was insufficient evidence in the record upon which to find Shirley was a drug addict. While Shirley admitted she had taken LSD before, she was not asked and did not state how often she had used LSD or when she had last taken any. She also testified that she had not taken any of the LSD found in the car Charles had been driving and stated she believed Charles intended to sell that LSD. Similarly, Shirley admitted that she had smoked marijuana but denied that she smoked it daily. Further, there is no affirmative evidence that Shirley was under the influence of any drug at any time relevant to this case. Shirley's testimony that she was unable to remember if she had used any drugs on October 20 or 21, 1980, did not justify such an instruction.

■ Lastly, we note that while defendant's proposed instruction was found proper in *People v. Phillips* (1970), 126 Ill. App. 2d 179, it was more recently found improper in *People v. Winfield* (1983), 113 Ill. App. 3d 818. We agree with *Winfield*. Where the witness is not shown to be an addict, the mere fact that she "used narcotics *at about the time the crime occurred*" does not require the jury to carefully scrutinize such testimony unless the witness was actually under the influence of the drug at the time of the occurrence to which he testifies. (See *People v. Bazemore* (1962), 25 Ill. 2d 74, 77.) Defendant's instruction, therefore, was overbroad and was not a correct statement of the law.

## IX

■ Defendant next argues that the trial court erred in allowing the State to introduce evidence of other unrelated and independent crimes. The "other crimes" evidence presented was the sale and delivery of phenobarbital in Pontiac on October 21, 1983. Defendant contends that the evidence had no probative value and that it confused the jury because the same drug was involved in both offenses, the prior sale occurred less than 24 hours before defendant's arrest and the participants in the first sale testified against him.

Generally, evidence of other crimes is inadmissible if relevant merely to show the defendant's propensity to commit crime. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 182, *cert. denied* (1983), 464 U.S. 844, 78 L. Ed. 2d 136, 104 S. Ct. 145.) Evidence of the commission of other crimes is admissible, however, when such evidence is relevant to prove *modus operandi*, intent, identity, motive, absence of mistake, or if it is relevant for any other purpose other than to establish the propensity to commit crime. (96 Ill. 2d 176, 182.) In the present case the evidence of the prior sale on October 21, 1983, clearly implied defendant's intent to deliver the remaining phenobarbital at a later time and helped to preclude any possible claim that defendant abandoned the drugs in the garbage cans or that they were for his personal use. Further, the jury was instructed that the testimony was admitted for this limited purpose and that it should not be considered for any other purpose. There is nothing in the record which indicates that the jury was confused or that it did not understand that defendant was charged with possession with intent to deliver the phenobarbital found in his garage, and not the prior sale in Pontiac.

■ Defendant argues in the alternative that if the court did not err in admitting the testimony generally, it erred in allowing the

State to elaborate, in excessive detail, the particulars of the crime. While defendant has raised this issue and cited *People v. Butler* (1975), 31 Ill. App. 3d 78, to support his general contention, defendant fails to set forth which details he believes were improperly allowed or to make any argument as to why these details were unnecessary to prove intent or were prejudicial to him. Clearly, some details of the prior sale were necessary to link the phenobarbital sold to the remaining phenobarbital seized in defendant's garage. Defendant's brief, therefore, gives us little assistance in considering the issue he seeks to present for review. Under such circumstances, a reviewing court may deem waived those issues which have not been sufficiently or properly presented. *Pecora v. Szabo* (1982), 109 Ill. App. 3d 824; *Williamson v. Opsahl* (1981), 92 Ill. App. 3d 1087.

## X

Defendant's tenth argument is that the court's sentence of 30 years' incarceration must be vacated or reduced because it does not strike a proper balance between the seriousness of the offense and his rehabilitative potential. Defendant bases his argument on the fact that: (1) he was convicted only of possession with intent to deliver a schedule IV controlled substance; (2) he is 62 years old and in ill health; and (3) he has only one prior conviction and has led an exemplary life since his release from Federal prison 10 years ago.

The determination and imposition of a sentence is a matter involving considerable judicial discretion, and the standard of review to be applied in determining whether a sentence is excessive is whether the trial judge abused his discretion. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492.) The trial judge's decision in regard to sentencing is entitled to great deference and weight. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) Such a decision depends upon many factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. The trial judge, in the course of the trial and the sentencing hearing, has an opportunity to consider these factors which is superior to that afforded by the cold record in this court. 68 Ill. 2d 149, 154.

The fact that phenobarbital is a schedule IV substance does not justify reducing defendant's sentence. As previously stated, defendant was properly convicted under section 401(a)(5) as a "large-scale" trafficker in controlled substances (Ill. Rev. Stat. 1981, ch. 56½, par. 1100). The fact that defendant was dealing in drugs at the age of 62 does not show rehabilitative potential and defendant did not present any evidence that imprisonment would endanger any

medical condition he might have; nor did defendant present any evidence that he has led an exemplary life since his release from prison. The trial court specifically found that defendant's good criminal record since his release was probably from his lack of apprehension and not from undertaking a law-abiding life. The court also specifically found that defendant engaged in his criminal conduct under ordinary everyday circumstances likely to recur and that defendant's character and attitude indicated he would likely commit another crime. Under these circumstances, we cannot find that the trial court abused its discretion in sentencing defendant to the maximum 30-year term.

## XI

■■ Defendant's last argument is that the trial court erred in concluding the trial in his absence. Defendant contends that in proceeding with the trial the day following his voluntary absence the court violated section 115—4.1(a) of the Criminal Code of 1961 which states, in relevant part:

> "If trial had previously commenced in the presence of the defendant and the defendant willfully absents himself for two successive court days, the court *shall* proceed to trial." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 38, par. 115—4.1.

In *People v. Flores* (1984), 104 Ill. 2d 40, our supreme court held that the statute was permissive, and not mandatory, in nature. The court read the word "shall" in the statute as permissive since a contrary interpretation would have rendered the statute unconstitutional under the separation of powers doctrine of article II, section 1 of the Illinois Constitution of 1970 (Ill. Const. 1970, art. II, sec. 1). Since the statute is permissive, the trial court did not err in proceeding the day after defendant absented himself from the trial.

For the reasons stated herein, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

STROUSE and UNVERZAGT, JJ., concur.