THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AMBER THOMAS, Defendant-Appellant.

First District (3rd Division)   No. 1—94—1593

Opinion filed February 21, 1996.

Rita A. Fry, Public Defender, of Chicago (Lester Finkle, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Kathryn A. Schierl, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

Following a jury trial, defendant, Amber Thomas, was found guilty of aggravated battery of a child in violation of section 12—4.3(a) of the Criminal Code of 1961 (720 ILCS 5/12—4.3(a) (West 1992)) and was sentenced to 10 years' imprisonment. It is from the judgment of conviction that defendant appeals to this court pursuant to section 6 of article VI of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Supreme Court Rule 603 (134 Ill. 2d R. 603).

For the reasons which follow, we affirm.

## FACTUAL BACKGROUND

On June 17, 1993, at approximately 9:30 p.m., defendant brought her 17-month-old son, S.T., to the emergency room of Wyler's Children's Hospital. S.T. was in critical condition and close to death. According to Dr. Clark Sheffield, defendant stated that S.T. had been fine all day; however, at about 9 p.m. the child awoke crying, with his eyes rolling backwards in his head.

Dr. Daniel J. Ledbetter performed surgery and several tests on S.T. and found that the child had extensive internal injuries to the liver, the kidney and the duodenum. Moreover, the child had an immense tear in his liver that had caused excessive hemorrhaging. Dr. Ledbetter estimated this injury to be only a few hours old. S.T. also

had several fractured bones of various ages and a rib fracture that was of recent origin. In addition, Dr. Ledbetter and Dr. Sheffield noticed multiple bruises on the child's abdomen, back and chest that were between one and three days old. Dr. Sheffield asked defendant if anyone had hit S.T. Defendant answered in the negative but stated that S.T. had been playing with three-year-old children on the playgrounds.

Due to the nature of S.T.'s injuries, one of the attending doctors notified the Chicago police and the Department of Children and Family Services (hereinafter DCFS). Bernice Marshall, a DCFS investigator assigned to investigate S.T.'s injuries, testified that defendant did not cry when Marshall explained S.T.'s critical condition. Chicago police youth officer Jack Collins also testified that defendant had no reaction when she was told about S.T.'s condition or taken to see S.T. Marshall further testified that defendant offered two possible explanations for S.T.'s injuries: (1) that a month prior to the incident someone ran into S.T. with a bicycle; and (2) that she had taken the child to the park at 8 p.m. that evening where he had fallen off of the slide. Officer Collins arrested defendant at Wyler Children's Hospital on June 18, 1993.

At trial, the State presented two witnesses who claimed to have observed defendant beating S.T. First, S.P., an eight-year-old girl who lived with her uncle, Adell Moore, defendant and S.T. in an apartment during the time in question, testified on direct examination that she remembered seeing defendant hit S.T. S.P. described an evening in June 1993, on which S.T. began "messing" with defendant's clothes. Defendant responded by grabbing S.T. by the wrist, lifting him off of the ground and hitting him on his back and on his side with her fist. S.P. further testified that the following day she, defendant, Moore and S.T. were in the kitchen, and S.T. began digging in the garbage can. Defendant responded by hitting the child in the back with her fist and telling him not to do that again. Later that evening, defendant took S.T. to the hospital. On cross-examination, S.P. stated that, prior to the trial, she could not remember all of the answers to the questions that the assistant State's Attorneys were asking her and that they helped her by telling her the answers.

At trial, Moore testified to the same events as did S.P., but with more detail. According to Moore, on June 16, 1993, S.T. began touching defendant's clothes with his sticky hands, and, in response, defendant hit him with her fist approximately 30 or 40 times. Moore also described the incident in the kitchen, which occurred on June 17, 1993. Moore recounted that S.T. began digging through the trash can, and defendant punched S.T. in the chest and hit him in the head

with a steel cabinet handle. Moore stated that during this incident S.P. was in and out of the house playing. Later that evening, S.T. awoke crying. Moore testified that he insisted that defendant take the child to see a doctor and gave her $20.

In the defense's case in chief, defendant testified that on June 16, 1993, she and S.P. spent the day shopping and visiting S.P.'s aunt and did not return home until around 11:30 p.m. Defendant put S.T. to bed and went to sleep herself. According to defendant's testimony, nothing happened to S.T. that day, and there was no incident involving S.T. messing her clothes. Defendant further testified that on June 17, 1993, at around 4 or 5 p.m., her friend, Lossie Bailey, came over and asked if S.T. could come out onto the porch to play with some other children. Defendant allowed S.T. to play on the porch. However, when she went outside to get him, Moore's mother informed her that Moore had taken S.T. Moore returned with S.T., who was asleep, approximately one hour later. Moore put the child in bed and immediately left. Thomas testified that she noticed nothing wrong with S.T. at that time. When Moore returned that evening, he went into S.T.'s room. Moore picked up S.T., who was moaning. Defendant kept calling the child's name, but he did not respond. Finally, defendant decided to take the child to the hospital.

On rebuttal, Officer Donald Peterson testified that he was present when Officer Collins and Marshall interviewed defendant. Peterson stated that, during the interview, defendant never mentioned allowing S.T. to go out onto the porch to play with the other children on June 17, nor did she mention Moore taking S.T. and returning with him later. Rather, Peterson testified that defendant only spoke of taking S.T. to the park at 8 p.m. on June 17 and of S.T. falling off of the slide. Furthermore, Peterson stated that he had interviewed S.P. and Moore prior to trial. Peterson testified that S.P.'s account of the events at that time was consistent with her trial testimony. The prosecutor then asked Peterson if Moore's account of the events given prior to trial was consistent with S.P.'s. The trial court sustained defense counsel's objection to this question, struck Peterson's response and told the jury to disregard what it had heard.

Assistant State's Attorney Ray Regner also testified on rebuttal that he interviewed defendant on June 18 and 19, 1993. Regner stated that during neither interview did defendant mention allowing S.T. out onto the porch to play or Moore taking S.T. and returning with him later. Moreover, Regner testified that he had spoken to S.P. and Moore prior to trial and that both witnesses told him what they had observed defendant do to S.T. The prosecutor then asked if the witnesses' accounts were consistent. Defense counsel again objected, and the trial court sustained the objection and struck Regner's response.

Subsequently, defendant was found guilty of aggravated battery of a child and sentenced to 10 years' imprisonment.

## ISSUES PRESENTED FOR REVIEW

On appeal, defendant contends that: (1) the trial court erred in permitting the introduction of the prior consistent statements of S.P. and Moore where no fabrication was alleged and where the statements served only to bolster the credibility of the State's witnesses; (2) the prosecutor committed reversible misconduct when she urged the jury to conduct its own fact-finding mission, provided her own testimony to fill in what S.P. failed to say at trial, and commented on the defense's failure to call a corroborating witness; (3) the trial court erred in limiting the cross-examination of S.P. concerning her possible bias, interest or motive; (4) she was not proven guilty beyond a reasonable doubt; and (5) the trial court abused its discretion in sentencing.

## OPINION

We first turn to defendant's contention that the trial court erred in allowing the introduction of the prior consistent statements of S.P. and Moore. Defendant argues that these prior consistent statements improperly bolstered the credibility of the State's two primary witnesses.

■ Generally, a witness' prior consistent statement is not admissible to corroborate a witness' trial testimony. (*People v. Williams* (1991), 147 Ill. 2d 173, 227, 588 N.E.2d 983; *People v. Clark* (1972), 52 Ill. 2d 374, 389, 288 N.E.2d 363.) However, an exception to this general rule exists where prior consistent statements are used to rebut a charge or an inference that a witness is motivated to testify falsely or that a witness' testimony is of recent fabrication. (*Williams*, 147 Ill. 2d at 227; *People v. Shum* (1987), 117 Ill. 2d 317, 340-41, 512 N.E.2d 1183; *Clark*, 52 Ill. 2d at 389, citing *Lyon v. Oliver* (1925), 316 Ill. 292, 303, and E. Cleary, Handbook of Illinois Evidence § 9.12 (2d ed. 1963).) In such situations, prior consistent statements are admissible to show that a witness told the same story before any motive came into existence or before the time of an alleged fabrication. (*Williams*, 147 Ill. 2d at 227; *Clark*, 52 Ill. 2d at 389.) A trial court's decision as to the admissibility of evidence shall not be disturbed absent an abuse of its sound discretion. *People v. Radovick* (1995), 275 Ill. App. 3d 809, 817, 656 N.E.2d 235.

In *Williams*, one of the State's witnesses who had implicated the defendant in front of the grand jury disavowed her grand jury testimony just prior to trial. The witness was thus indicted for participating in the crime and for perjury. At the trial, however, the

witness testified consistently with her former grand jury testimony, again incriminating defendant. On cross-examination, opposing counsel extensively questioned the witness as to whether her testimony was given in the hope of receiving leniency. The transcript of the witness' grand jury testimony was then introduced by the State as substantive evidence. In affirming the trial court, our supreme court stated that the defense clearly raised an inference that the witness' testimony was of recent fabrication, and, therefore, it was not error to admit the prior consistent statements of the witness. *Williams*, 147 Ill. 2d at 227.

Similarly, in *Shum*, the supreme court held that it was not erroneous for the trial court to admit prior consistent statements of a witness after opposing counsel made inferences that such witness had recently changed her story and that she had acquired a motive to testify falsely. The *Shum* court acknowledged the general rule prohibiting out-of-court statements for the purpose of corroborating a witness' direct testimony. However, since the witness' statement was made prior to the alleged fabrication and prior to her acquiring a motive to lie, the statement fit neatly within the rule's exception. Thus, the evidence was held to have been properly admitted.

■ In the case *sub judice*, the record indicates that defense counsel charged or at least strongly implied that S.P.'s testimony was of recent fabrication. During the cross-examination of S.P., defense counsel asked S.P. if she had reviewed the questions to be asked at trial with the assistant State's Attorneys, to which she responded affirmatively. Defense counsel questioned S.P. numerous times as to whether she was able to remember all of the answers and if the assistant State's Attorneys assisted her with the answers. S.P. admitted on cross-examination that the assistant State's Attorney had helped her with some of the answers. Defense counsel continued by asking S.P. if the assistant State's Attorneys had helped her with a lot of the answers and whether she could remember which answers she was given and which she remembered on her own. Clearly, this line of questioning by defense counsel raised an inference, if not a direct charge, that S.P.'s testimony was fabricated immediately prior to trial.

In response, the State introduced S.P.'s prior statements made to Officer Peterson and Regner. By offering such statements into testimony, the State sought to illustrate to the jury that S.P. told the same version of the facts nine months prior without being coached by the assistant State's Attorneys. Moreover, the State attempted to show that the coaching by the assistant State's Attorneys prior to trial was simply to remind the witness of what she already knew;

thus, there was no recent fabrication. The use of prior consistent statements in this case falls squarely within the exception to the general rule stated by our supreme court in *Williams*. (See *Williams*, 147 Ill. 2d at 227.) Thus, we hold that the trial court was proper in admitting S.P.'s prior consistent statements into evidence.

■ Defendant also argues that despite her objections, the rebuttal witnesses were also allowed to testify as to Moore's prior consistent statements. Defendant contends that, although such statements were stricken from the record, the trial judge did not instruct the jury to disregard portions of such testimony. It is well settled that a judgment should be reversed because of error only when it appears that the error affected the result of the trial. An appeals court must determine whether any error occurred which prejudiced defendant or which contributed to defendant's conviction. (See *People v. Rickard* (1981), 99 Ill. App. 3d 914, 425 N.E.2d 1317.) Assuming, *arguendo*, that the trial judge did in fact err by not instructing the jury to disregard such testimony, the error was harmless, for defendant has failed to demonstrate any prejudice that she suffered as a result of the jury hearing the testimony. Thus, even if the jury had been instructed to disregard the already stricken statements, we are convinced that its verdict would not have changed given the overwhelming evidence presented by the State. Therefore, the trial court's instruction, assuming it was incorrect, was harmless error that does not warrant reversal of the judgment.

Next, defendant maintains that the prosecutor committed reversible misconduct when she urged the jury to conduct its own fact-finding mission, provided her own testimony to fill in what S.P. failed to say at trial and commented on the defense's failure to call a corroborating witness. However, the State contends that defendant has waived review of these remarks. Thus, we will first address the issue of waiver.

■ Our supreme court has held that, absent plain error, *both* a trial objection *and* a written post-trial motion raising the issues in question are required to preserve such issues for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124; see also *People v. Carlson* (1980), 79 Ill. 2d 564, 576.) Moreover, it is insufficient to merely refer to a cited error in a post-trial motion without factual detail. (*People v. Medeiros* (1993), 249 Ill. App. 3d 139, 140, 618 N.E.2d 1065.) Specific objections are required to ensure that the trial court was adequately apprised of the cited error. *Medeiros*, 249 Ill. App. 3d at 140, citing *People v. David* (1986), 141 Ill. App. 3d 243, 261, 489 N.E.2d 1124.

■ In the present case, defendant failed to object at trial and to

specifically object in her post-trial motion to prosecutor's comments regarding the coloration of the bruises found on the child's body and to prosecutor's remarks regarding S.P.'s prior consistent statements. Moreover, although defendant objected at trial to remarks concerning defendant's failure to call a corroborating witness, defendant again failed to specifically raise this issue in her post-trial motion. Thus, since the plain error doctrine is not applicable in this instance, such issues have been waived and will not be addressed further.

■ Defendant's third contention is that the trial court erred in limiting the cross-examination of S.P. concerning her possible bias, interest or motive. Again, we will not consider the merits of this argument, for defendant has failed to allege the error in her post-trial motion, and the plain error doctrine does not apply. (*Enoch*, 122 Ill. 2d at 186; see *Carlson*, 79 Ill. 2d at 576.) Thus, this issue was not properly preserved and, therefore, it is not cognizable on appeal.

■ We next turn to defendant's contention that the evidence presented at trial was insufficient to prove her guilty beyond a reasonable doubt. Defendant argues that the testimony given at trial was inconsistent and incredible and that the witnesses were motivated to lie and had lapses of memory concerning the incidents in question. In criminal cases where the sufficiency of the evidence is at issue, the proper standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) Moreover, "[a] criminal conviction will not be set aside on review unless the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt." *People v. Burrows* (1992), 148 Ill. 2d 196, 224, 592 N.E.2d 997.

■ In the case at hand, the pivotal evidence offered by the prosecution was the eyewitness testimony of S.P. and Moore. Defendant argues, however, that S.P.'s testimony is incredible because she admitted that the assistant State's Attorneys assisted her with the answers to the questions prior to trial. Similarly, defendant claims that Moore's testimony is incredible because he had been in jail on a contempt charge for refusing to testify in this case and because he had previously been convicted on narcotics charges. Moreover, defendant argues that the accounts given by S.P. and Moore are inconsistent with each other, as well as inconsistent with the medical evidence admitted in the case. We find, however, that the evidence presented at trial was, in fact, sufficient for a rational trier of fact to find defendant guilty beyond a reasonable doubt.

Although S.P. admitted that the assistant State's Attorneys had

assisted her prior to trial, her credibility was restored when the rebuttal witnesses testified that she told the same version of the facts during interviews nine months earlier. Moreover, the fact that Moore had a previous criminal record, as well as the fact that he had initially refused to testify and had been held on contempt charges, does not render his testimony so unbelievable as to require reversal. Rather, the jury was advised of these circumstances and could, therefore, make an informed decision as to the weight it wished to place on the witnesses' testimonies. It is the function of the jury to determine the credibility of witnesses and resolve conflicts. (*People v. Jordan* (1960), 18 Ill. 2d 489, 165 N.E.2d 296.) Furthermore, contrary to defendant's assertions, the record indicates that the testimonies of S.P. and Moore were in fact similar and were consistent with the medical evidence presented. Thus, given the evidence offered by the State, we find that defendant was proven guilty beyond a reasonable doubt.

■ Still to be considered is defendant's fifth contention that the trial court abused its discretion in sentencing her. Defendant argues that her 10-year sentence was excessive given her rehabilitative potential and lack of criminal background.

The 1970 Illinois Constitution mandates that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, § 11.) A trial court's sentencing decisions are entitled to great deference and weight. (*People v. Ward* (1986), 113 Ill. 2d 516, 526, 499 N.E.2d 422; *People v. Streit* (1991), 142 Ill. 2d 13, 18, 566 N.E.2d 1351.) Absent an abuse of discretion by a trial court, a sentencing decision will not be altered upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Furthermore, a trial judge is in the best position to determine the appropriate sentence, for such judge can consider firsthand "[a] defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age [citations]." *Streit*, 142 Ill. 2d at 19.

We cannot agree that the trial court abused its discretion in sentencing defendant. Contrary to defendant's assertions, the record indicates that the trial court carefully considered all mitigating and aggravating factors before imposing its sentence. The sentencing range for aggravated battery of a child is 5 to 30 years' imprisonment. (720 ILCS 5/12—4.3 (West 1992).) The trial judge specifically stated that, because of defendant's rehabilitative potential, he was not imposing the maximum sentence allowed under the statute. Moreover, the trial court noted that this was defendant's first arrest and that this, too, was a mitigating factor in his decision. However,

the trial judge also considered the aggravating factors that surrounded the crime, namely, the vicious beating that took place, the young age of the victim, and the imminency of the child's death when he was finally brought to the hospital. It is clear upon review that the trial judge took *all* relevant factors into consideration before imposing the sentence. Accordingly, we find no abuse of discretion.

In light of the foregoing, we affirm the judgment of the circuit court of Cook County.

Affirmed.

RIZZI, P.J., and GREIMAN, J., concur.