THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARLON PENDELTON, Defendant-Appellant.

First District (6th Division) No. 1—86—2184

Opinion filed June 23, 1989

Randolph N. Stone, Public Defender, of Chicago (Thomas J. Brosnan and Alison Edwards, Assistant Public Defenders, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Marie Quinlivan Czech, and Daniel J. Lynch, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINLAN delivered the opinion of the court:

The defendant, Marlon Pendelton, was tried by a jury in the circuit court of Cook County on the charge of unlawful use of a weapon by a felon. The jury found the defendant guilty of that charge and the defendant was sentenced to three years' incarceration. Defendant appeals his conviction. We affirm.

The relevant testimony at defendant's trial was as follows. As its

first witness, the prosecution presented Officer Richard Johnson, who testified that at approximately 12:30 a.m. on February 28, 1985, he and his partner, Officer William Brantley, responded to a call of a man with a gun on 75th and Exchange in Chicago, Illinois. When they arrived, Officer Johnson said he saw a group of people looking across 75th Street at the defendant, who was standing on the opposite corner. When Johnson approached the defendant, the defendant started running and Johnson ran after him. During the chase, which lasted less than a minute, Johnson, who was about 10 to 15 feet behind the defendant, saw the defendant pull an object out from his pocket, and heard what sounded like a gunshot. At that point, Johnson pulled out his gun, and ordered the defendant to stop, but the defendant continued to run. Defendant then dropped the object on the ground and Johnson heard a clicking noise as the object hit the ground. Johnson chased the defendant another 10 feet or so and apprehended him. When Johnson reached the defendant, he arrested him and then returned to retrieve the object that the defendant had dropped. The object that Officer Johnson recovered was a .22 caliber revolver which contained five live cartridges and one spent cartridge.

Johnson also testified that while he was chasing the defendant, Officer Brantley had driven the squad car down the street to cut off the defendant; but by the time Brantley arrived, Johnson had already apprehended the defendant and recovered the gun. Johnson identified the gun in court and noted that there was a slight break on the barrel and a break in the plastic on the edge of the handle as he had observed when he recovered it.

On cross-examination, Johnson admitted that there was a discrepancy between his testimony and the arrest report that was prepared and signed by Officer Brantley on his behalf. Contrary to Johnson's direct testimony, the arrest report stated, "Note: The weapon was recovered from the subject after a custodial search to wit a .22 cal. revolver ***." Johnson testified that this statement was incorrect and had been added after he reviewed the report. On redirect examination, Johnson testified that he had personally prepared the incident report for the case and that the incident report stated that the gun was thrown to the ground by the defendant. The State then presented a stipulation that the defendant had a prior felony conviction for armed robbery in 1977.

The defendant presented his own testimony, the testimony of his girlfriend Antoinette Ferguson, and the testimony of Ferguson's girlfriend Sade Armstrong. All of the defense witnesses testified that Ferguson's ex-boyfriend, George, approached defendant, argued with

him, and then pulled a gun on the defendant and threatened to kill him. Defendant ran into a restaurant to call the police, they said, and George followed. Defendant then ran out of the restaurant with George in pursuit. Armstrong stated that when the police arrived, they threw defendant to the ground, searched him and asked him where the gun was. She said that she tried to tell the police officers that the defendant did not have the gun, but they refused to listen. Armstrong further testified that she heard a voice behind her point out the gun to the police, and, she said, she believed that the voice she heard belonged to George, since he was the only person standing behind her.

Cross-examination of the defense witnesses revealed that Ferguson, defendant's girlfriend, had been convicted of forgery in 1982 and robbery in 1986. In addition, Armstrong, Ferguson's friend, never came forward as a witness until the time of trial, approximately 1½ years later. The State called Officer Johnson in rebuttal, and he stated that he had not seen anyone chasing defendant, that no one, including the defendant, had said anything about defendant being chased, and that no one had pointed out the gun on the ground to him. In addition, the State presented the evidence of defendant's prior conviction again, this time for the purpose of rebutting or impeaching the defendant's credibility.

The jury found the defendant guilty, and the jurors were then dismissed. Later that same day, defense counsel informed the court that on the inside latch on the lock of the door to the men's room, used by the male jurors, the word "guilty" was written in red ink, and in capital letters on the side of the latch. The court then swore in the court clerk who had found the lettering, as well as the deputy who had also seen the latch. The court found that the word had been there at least four days and that the letters were about one-quarter of an inch high. The defendant moved to vacate the verdict, but the court denied the motion and sentenced the defendant to a three-year term of imprisonment.

Subsequently, the defendant moved for a new trial based on this graffiti which was on the latch and presented four photographs of the latch. The judge then questioned defense counsel, who saw the word when the photos were taken, and the cleaning lady who cleaned the word off the latch. The judge ascertained that the latch was about 40 inches above the floor and 2½ inches from the door frame. When locked, the latch was in a horizontal position, and the graffiti faced down to the ground, and when unlocked, the latch was in a vertical position, and the graffiti faced to the side. The latch was brass in

color and was 1½ inches long and three-quarters of an inch wide. Thereafter, the court denied defendant's motion.

Defendant raises four issues on appeal: (1) whether the trial court erred when it denied defendant's motion for a new trial based on the fact that the word "guilty" was written on the latch of the lock of the men's room used by the male jurors; (2) whether the trial court erred when it allowed the State to present evidence of Officer Johnson's prior consistent statement; (3) whether the trial court erred when it allowed the State to present evidence of defendant's prior conviction to the jury twice; and (4) whether the remarks in the State's closing argument were proper.

 The first issue raised by the defendant is whether the trial court erred when it denied his motion for a new trial based on the fact that the word "guilty" was written on the inside latch to the door of the men's room used by the male jurors. A fair trial requires the participation of impartial jurors. (*People v. Jones* (1985), 105 Ill. 2d 342, 353, 475 N.E.2d 832, 837.) In most cases involving claims of deprivation of due process, there must be actual evidence of prejudice to the accused. However, in cases where the circumstances create " 'such a probability that prejudice will result *** [the trial] is deemed inherently lacking in due process.' " *Jones*, 105 Ill. 2d at 352, 475 N.E.2d at 836, quoting *Estes v. Texas* (1965), 381 U.S. 532, 542-43, 14 L. Ed. 2d 543, 550, 85 S. Ct. 1628, 1633.

In *People v. Jones*, our supreme court found that the trial court in that case erred when it refused to grant a mistrial. The supreme court held that prejudice was presumed where the facts established that black racist material was found in the jury room during the capital trial of an accused black man and that the racist material was admittedly read by three members of an all-white jury. (*Jones*, 105 Ill. 2d at 352, 475 N.E2d at 836.) In addition, the *Jones* court expressed concern that a copy of this material had been disseminated by a nonjuror who should not have been in the jury room, and moreover, that no one had brought the matter to the court's attention. (*Jones*, 105 Ill. 2d at 352, 745 N.E.2d at 837.) In *United States v. Williams*, however, the Seventh Circuit found that a mistrial was not required where the facts there established that five jury members received harassing telephone calls at their homes from the same caller, who identified himself as a representative of concerned citizens and specifically referred to the defendant's trial. (*United States v. Williams* (7th Cir. 1984), 737 F.2d 594.) In four of the calls in the *Williams* case, the defendant's name was used, in one call the word "hoodlums" was used, and in another call, the juror was urged to find the defendant "guilty."

(*United States v. Williams* (7th Cir. 1984), 737 F.2d 594.) The *Williams* court noted that "at most one juror heard a comment urging a guilty verdict, something properly heard from the prosecutor at trial." *Williams*, 737 F.2d at 612.

Defendant here contends that he did not receive a fair trial because the jurors were prejudiced by the word "guilty" printed on the latch of the lock inside the male jurors' rest room. The defendant claims that prejudice must be presumed here, just as it was in *Jones*, because there were eight male jurors in this case who might have been exposed to the graffiti. This graffiti, he asserts, urged them to find the defendant guilty throughout the course of the trial, and, he notes, the information was even more offensive, and more prejudicial, because the graffiti here was not in merely a public rest area, but was in the rest area within the courtroom. The State, however, urges that prejudice may not be presumed from these circumstances, and, because prejudice cannot be presumed, the defendant had the burden to prove the existence of actual prejudice. Here, the defendant did not meet this burden, the State contends, because no evidence was presented to indicate if any of the jurors actually saw the graffiti, or that any of the jurors were in any way prejudiced by the graffiti. Moreover, even if certain of the jurors had seen the graffiti, the State claims, they would merely have been exposed to the same argument that the State made at trial, *i.e.*, that the defendant was guilty, as the court in *Williams* had found. See *Williams*, 737 F.2d 594.

We agree with the State and find that the defendant here was not denied a fair trial. The circumstances did not create such a probability that prejudice would result so as to cause the trial to be inherently lacking in due process. The graffiti consisted on one word, "guilty," and there was no reference to this particular defendant. Furthermore, the physical nature of where and how it was written was such that it was not easily noticeable, in any event. In fact, it appears that a person would have had to stand directly in front of the latch, looking down in order to see it. The word "guilty," moreover, as noted by the court in *Williams*, suggested no more than what the State argued at trial. (See *Williams*, 737 F.2d 594.) Also, this case is radically different in nature from the *Jones* case, where inflammatory material was found in the jury room and that material had admittedly been read by three members of an all-white jury in the capital trial of a black man. (See *Williams*, 737 F.2d 594; *Jones*, 105 Ill. 2d 342, 475 N.E.2d 832.) Accordingly, we find that prejudice may not be presumed here, and that the burden fell upon defendant to present evidence of actual prejudice, and that he failed to present any such evidence. Thus, the trial

court correctly denied defendant's motion for a new trial on the basis of this contention.

■■ ■ Defendant next claims that the trial court erred when it allowed the State to bolster Officer Johnson's testimony through evidence of his prior consistent statement. As a general rule, a witness may not be rehabilitated by the admission of former statements consistent with his trial testimony. (*People v. Harris* (1988), 123 Ill. 2d 113, 139, 526 N.E.2d 335, 346.) It is well established, however, that where a witness has been impeached by proof that he made prior inconsistent statements, all of the witness' prior statements may be presented to qualify or explain the inconsistency and to rehabilitate the witness. *Harris*, 123 Ill. 2d at 139, 526 N.E.2d at 346.

Defendant simply contends that the evidence of Officer Johnson's prior consistent statements should have been inadmissible under the general rule that prior consistent statements are inadmissible if the statements are used to bolster a witness' testimony. The State, however, asserts that the evidence here was admissible, because the defense presented evidence of a prior inconsistent statement in the form of the arrest report, signed by Officer Brantley on Officer Johnson's behalf. The State argues that the trial court properly allowed the State to rebut the prior inconsistent statement with evidence of a prior consistent statement in the form of the incident report prepared by Johnson himself.

We agree with the State that the impeaching evidence of the arrest report, which stated that the gun was found in a custodial search of the defendant, was properly rebutted by the prior consistent statement in the incident report that Johnson himself had prepared, which stated that the gun had been thrown to the ground. Since this evidence was not used to bolster Johnson's testimony, but was used rather to rebut an alleged prior inconsistent statement, the evidence was properly admitted by the trial court.

■■ ■ Defendant next contends that he was denied his right to a fair trial because he was prejudiced when the trial court allowed the State to present evidence of his prior conviction to the jury twice. In a case where the charge against a defendant is the felony offense of unlawful use of a weapon by a felon, evidence of a defendant's alleged prior felony conviction must be presented by the State in its case in chief because the prior conviction is proof of an element of the offense itself. (*People v. Palmer* (1984), 104 Ill. 2d 340, 472 N.E2d 795.) Additionally, evidence of a prior conviction may also be used to impeach a defendant's credibility when he testifies, and it is within the discretion of the trial court whether to allow this evidence to be used

in a particular case. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 515, 268 N.E.2d 695, 698.) In *People v. Montgomery*, our supreme court set forth the test to be applied by the trial judge in determining whether evidence of a defendant's prior convictions may be used to impeach a defendant's testimony. The test provides that evidence of the convictions should be excluded if the judge determines that the probative value of the evidence is outweighed by the danger of unfair prejudice to the defendant. *Montgomery*, 47 Ill. 2d at 517, 268 N.E.2d at 699-700; *People v. McKibbins* (1983), 96 Ill. 2d 176, 188-89, 449 N.E.2d 821, 826.

■■ The defendant argues that the trial judge did not properly apply the balancing test and that the trial judge, therefore, abused his discretion when he allowed the State to use the evidence of defendant's prior conviction here, especially since the parties had already stipulated to that fact. The State claims that the trial judge applied the proper balancing test and that the evidence of the conviction was properly allowed in both instances, *i.e.*, in the State's case in chief and in rebuttal. The State asserts that the evidence was proper in the first instance because it was necessary to prove an element of the offense, and, in the second instance, it was proper to impeach defendant's testimony.

We find that the trial court did not abuse its discretion here. The evidence of defendant's prior conviction was properly and necessarily admitted here in the first instance to prove an element of the offense. In the second instance, it was within the trial judge's discretion to allow the use of the evidence to impeach defendant's testimony if, as noted, the probative value outweighed the prejudicial effect. It appears from the record here that the trial judge properly considered the prejudicial effect of the evidence, and, only then, allowed the evidence. We cannot say that the court abused its discretion under these circumstances. Moreover, even if it was erroneous for the trial judge to have allowed the conviction to be admitted a second time, any error was harmless. The jury had, as noted, properly heard the evidence already once before, and the mere fact that the jury heard it twice, but for two different purposes, did not amount to reversible error under the facts presented. Moreover, the evidence of defendant's guilt was substantial here.

■■ In his final contention, the defendant claims that the State improperly attacked defense counsel and misstated the evidence in the closing arguments. To preserve an issue for review, a defendant must object at trial and the issue must be set forth in defendant's motion for a new trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522

N.E.2d 1124.) A general reference, in a post-trial motion, to a prosecutor's "prejudicial, inflammatory and erroneous statements in closing arguments" is not normally specific enough to preserve the issue on review. *People v. David* (1986), 141 Ill. App. 3d 243, 261, 489 N.E.2d 1124, 1135.

Furthermore, it is well settled that the prosecutors are given wide latitude in closing arguments, and the scope of permissible argument is within the sound discretion of the trial judge. (*People v. Uzelac* (1988), 179 Ill. App. 3d 395, 534 NE.2d 1250.) Remarks in closing argument which are based on the evidence or reasonable inferences therefrom are permissible. *People v. Terry* (1984), 99 Ill. 2d 508, 460 N.E.2d 746.

The defendant contends here that the prosecutor, in closing argument, misstated the evidence when he told the jury that Officer Brantley did not see the entire action and that, thus, Brantley's report contained erroneous information. He also claims that the prosecutor improperly insinuated that defense counsel was misleading the jury. The State, however, argues that the defendant waived any error when he failed to specify the nature of the errors in closing, and that even if there were not a waiver here, the remarks of the prosecutor were proper.

We find that under the *David* decision, defendant's claim here was not preserved for review by the general statement in his motion for a new trial that the prosecutor "made prejudicial inflammatory and erroneou[s] statements in closing argument designed to arouse the prejudice and passions of the jury." (See *David*, 141 Ill. App. 3d 243, 498 N.E.2d 1124.) However, even if there were no waiver here, we find that the prosecutor's statements were properly based on the evidence and the reasonable inferences therefrom, and, thus, the trial judge did not abuse his discretion in allowing these arguments.

Judgment affirmed.

McNAMARA and LaPORTA, JJ., concur.