THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MELVIN BURNETT, Defendant-Appellant.

First District (3rd Division)   No. 1—82—2213

Opinion filed September 30, 1994.

12

Michael J. Pelletier and Ann C. McAllister, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Christine Cook, and Dori K. Leo, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE TULLY delivered the opinion of the court:[1]

Defendant, Melvin Burnett, was charged by indictment with four counts of murder, armed robbery, attempt (armed robbery), conspiracy to commit armed robbery and armed violence. After a bench trial, defendant was convicted as charged with the exception of an acquittal on the charge of armed robbery. Subsequently, defendant was sentenced to 80 years' imprisonment for the four murder counts, 15 years' imprisonment for attempt (armed robbery), 7 years' imprisonment for conspiracy and 15 years' imprisonment for armed violence, all terms to run concurrently. Defendant appeals to this court from the judgment of conviction pursuant to Supreme Court Rule 603 (134 Ill. 2d R. 603).

For the reasons which follow, we affirm and remand.

---

[1]This case was originally reported at 257 Ill. App. 3d 383. Subsequent to publication, the opinion was modified upon remand from the Illinois Supreme Court and refiled September 30, 1994.

## FACTUAL BACKGROUND

On August 21, 1980, Carl Stohn was shot to death in the area of 950 North La Salle Street in Chicago. Defendant, along with Billy Martin, a codefendant, was indicted for the crime as indicated above. Martin is not a party to this appeal.

Prior to trial, defendant filed a motion to suppress certain statements after his arrest on November 15, 1980, made to the police and an assistant State's Attorney. Defense counsel contended that defendant did not possess the requisite mental ability to make a voluntary, knowing and intelligent waiver of his rights under *Miranda*. Accordingly, the trial court held a suppression hearing at which Detectives Clay Steen, John Bittenbinder and Thomas Sappanos of the Chicago police department and Assistant State's Attorney Paula DaLeo testified as to the circumstances of their conversations with defendant.

Bittenbinder recounted that he read defendant his *Miranda* rights from a sign on the wall of the interview room in the police station. After defendant said that he understood his rights, Bittenbinder questioned defendant about the shooting with no one else present. Bittenbinder testified that he did not threaten or harass defendant during their conversation, and stated that defendant did not appear to be afraid during the interview or comport himself in an unusual way.

Following Bittenbinder's interrogation of defendant, DaLeo was called to assist. DaLeo had three conversations with defendant about the shooting of Carl Stohn. The first interview took place at the police station in the presence of Sappanos. DaLeo questioned defendant about 10 to 15 minutes after she read him his *Miranda* rights.

Shortly after DaLeo's first interview with defendant, she had a second conversation with him in the presence of Sappanos, Bittenbinder and Detective O'Leary. The second interview took place at the crime scene and lasted about 10 to 15 minutes.

Finally, DaLeo had a third conversation with defendant at the police station in the presence of Sappanos and a court reporter. The court reporter transcribed a statement by defendant and DaLeo gave it to him.

Sappanos testified that defendant was cooperative and did not appear to be nervous. Sappanos was present when defendant was given the statement prepared by the court reporter to read. Sappanos stated that he viewed defendant signing the statement and noticed nothing unusual about defendant's signature.

After the State finished presenting its case at the suppression hearing, the trial court announced that it would rule on the motion to suppress at the next hearing. Defense counsel responded that two

members of defendant's family would testify along with a doctor from the Psychiatric Institute, a division of the circuit court of Cook County. The trial court asked what bearing the doctor's testimony would have on the motion to suppress. Defense counsel responded the doctor would testify concerning defendant's ability to understand his *Miranda* rights, whether he was able to resist pressure by authorities during interrogation and whether he could give a statement of his own volition. The trial court would not allow the doctor to testify as a rebuttal witness. The trial court then continued the hearing for five days so defendant could present additional witnesses. The additional witnesses never appeared. The trial judge denied defendant's motion to suppress. The case then went to trial.

At trial, both defendant and Martin waived their right to a jury trial and were jointly tried by the court. It was stipulated that Dr. Daniel Delboccio, a pathologist with the Cook County medical examiner's office, performed an autopsy on Carl Stohn on August 21, 1980, which revealed that he died as a result of a gunshot wound to the head. The parties further stipulated Carl Stohn's friend of 12 years, Lee McGovern, if called to testify, would state that he went to the Cook County morgue and identified the victim.

Bittenbinder testified that on August 21, 1980, he received an assignment in the area of 950 North La Salle Street. Bittenbinder recounted that when he arrived on the scene he observed the victim on the sidewalk with a gunshot wound above his right eye.

DaLeo testified at trial as to the circumstances of her interviews with defendant and his signing the statement prepared by the court reporter. The written statement was then introduced into evidence at trial. In the document, defendant stated that on August 21, 1980, he planned with Melvin Lewis to "go out and stick up somebody." Lewis gave defendant a pistol and defendant left with Martin. Subsequently, defendant and Martin went to Madden Park, where they met a man called "Demp." Upon leaving the park, defendant, Martin, an individual known as "Hitman," and two other persons traveled in a stolen automobile to the intersection of Division Street and La Salle Street. The five men saw the victim coming down the street. The car was stopped and defendant, Martin and Hitman exited it near a bus stop. As the victim walked behind defendant, defendant "wheeled around on him and put the gun to [the victim's] head, and said, this is a stickup." Defendant pushed the victim up against a fence. The victim grabbed Martin's collar. Martin then said three times "shoot him." As defendant held the gun against the victim's head, he shot the victim and ran away.

Following closing arguments, the trial court found defendant and

Martin guilty. Subsequently, the trial court heard and denied defendant's motion for a new trial.

At the State's request, the trial court conducted a death penalty hearing concerning defendant. After the exhaustive hearing was completed, due to defendant's lack of prior "extreme criminal activity," the trial court declined to impose the death penalty.

## ISSUES PRESENTED FOR REVIEW

On appeal, defendant contends that: (1) his rights under the fifth, sixth and fourteenth amendments to the United States Constitution were violated when at the pretrial hearing on his motion to suppress his written statement the trial court barred relevant psychiatric evidence concerning his ability to understand his *Miranda* rights and whether he had the intellectual capacity to make a knowing and intelligent waiver of those rights; (2) the trial court abused its discretion in sentencing him; (3) three of defendant's convictions for murder and his conviction for armed violence must be vacated on "one act, one crime" principles; and (4) this cause must be remanded for a new sentencing hearing where the trial court imposed a seven-year sentence for conspiracy where the statute only authorizes a maximum term of three years' imprisonment.

## OPINION

We turn first to defendant's contention that his Federal constitutional rights as guaranteed by *Miranda* were violated by the trial court's not admitting into evidence the testimony of a doctor from the Psychiatric Institute at the suppression hearing. We believe that this issue was waived by defendant. It is settled law that absent plain error, "*[b]oth* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphasis in original.) (*People v. Enoch* (1988), 122 Ill. 2d 176, 186; see also *People v. Nevitt* (1990), 135 Ill. 2d 423; *People v. Adams* (1985), 109 Ill. 2d 102.) Furthermore, the mere referral to a cited error in a post-trial motion as prejudicial or erroneous, without factual detail, is insufficient to preserve an issue on appeal. (*People v. Medeiros* (1993), 249 Ill. App. 3d 139, 140.) In the case *sub judice*, defendant did object at trial and raise the issue in his post-trial motion. However, defendant's post-trial motion merely alleges prejudice generally and broad conclusions as to what the Psychiatric Institute's doctor would report. No report or evaluation of any kind was ever attached to either the original motion to suppress or the post-trial motion. In fact, the only formal communication from the Psychiatric Institute contained in the record is a letter written

by Dr. Gerson Kaplan, a staff psychiatrist, five months prior to the filing of the motion to suppress, stating that defendant was able to understand the nature of the charges pending, the purpose of the court proceedings, cooperate with defense counsel, appreciate the criminality of the offense and conform his conduct to the requirements of the law. Accordingly, we find defendant's offer of proof in post-trial motion woefully inadequate to fully apprise the trial court of the cited error. Thus, as we perceive no plain error in the trial court's ruling, we find this issue waived.

Even if we assume that the trial court somehow erred in failing to admit the doctor's testimony into evidence, we are satisfied beyond a reasonable doubt that the lack of this evidence did not prejudice defendant. There was enough evidence from which the trial court could have reasonably drawn the inferences that it did with regard to defendant's waiver of *Miranda* rights. Consequently, we find that the complained-of error was harmless. *People v. Rickard* (1981), 99 Ill. App. 3d 914.

■ We next address defendant's contention that the trial court abused its discretion in sentencing him. Initially, we note that the State urges that defendant has waived review of this issue by failing, *inter alia*, to timely file a post-trial motion. However, subsequent to argument of this case our supreme court in *People v. Lewis* (1994), 158 Ill. 2d 386, rejected this line of argument finding section 5—8—1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(c)) does not require a motion to reduce the sentence of defendant wishing to appeal the severity of a sentence. Thus, we shall now address this issue.

Pursuant to Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615 (b)(4)), the appellate court has the power to reduce sentences. The basic issue on review is whether the trial court abused its discretion in imposing the particular sentence. (*People v. Perruquet* (1977), 68 Ill. 2d 149.) An abuse of discretion can be found in a sentence that is within the statutory limitations if that sentence is greatly at variance with the purpose and spirit of the law. (*People v. Steffens* (1985), 131 Ill. App. 3d 141; see also *People v. Gibbs* (1977), 49 Ill. App. 3d 644.) The 1970 Illinois Constitution mandates that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11.

In the case *sub judice*, defendant argues that the trial judge overemphasized the need to punish defendant and made no specific finding pursuant to section 5—5—3.2(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)) that the

crime was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. Additionally, defendant points to comments by the trial judge that the defendant will be "burned out" by the penitentiary as demonstrative of an abuse of the trial court's discretion. We do not think this is so.

■ Our careful review of the record clearly indicates that the trial judge took into account *all* the relevant factors when sentencing defendant, noting both specific aggravating and mitigating factors from defendant's presentencing report at both the death sentence hearing and subsequently. Accordingly, we find no abuse of discretion.

■ Next, defendant urges that four of his convictions for murder and his conviction for armed violence must be vacated on "one act, one crime" principles. The State concedes this point. Where there is only one victim, there can be only one conviction for murder. (*People v. Williams* (1991), 215 Ill. App. 3d 800; *People v. Kidd* (1989), 180 Ill. App. 3d 1065.) Therefore, since one death alone occurred in the present case, three of defendant's convictions for murder must be vacated. Moreover, defendant's conviction for armed violence must be vacated as well because he was convicted of the underlying offense of murder. *People v. Donaldson* (1982), 91 Ill. 2d 164; *People v. King* (1977), 66 Ill. 2d 551.

Accordingly, we remand this case to the trial court for the sole purpose of correcting defendant's mittimus to reflect that defendant was convicted of only one murder under section 9—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(1)), attempt (armed robbery) under section 8—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 8—4), and conspiracy under section 8—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 8—2).

■ We now turn to defendant's contention that a new sentencing hearing is necessary as the vacated counts may have influenced the trial judge when sentencing. We find this line of argument completely vapid. In the case at hand, the trial judge was well aware from the inception of the case that it was a single individual that was murdered.

■ Still to be considered is defendant's position that this cause must be remanded for a new sentencing hearing where the trial court imposed a seven-year sentence for conspiracy where the statute only authorizes a maximum term of three years' imprisonment. The State contends that this question is moot and we agree. "It is a hoary principle of the common law that when a case is rendered moot, a court's decision on the merits will not afford either party relief and any decision thus reached is merely an advisory opinion. [Citation.]

Illinois courts do not issue advisory opinions and should not indulge in the practice of rendering opinions simply for the sake of creating precedents to govern future cases." (*People v. Halasz* (1993), 244 Ill. App. 3d 284, 285-86.) In the case *sub judice*, defendant has already served the sentence and, thus, any decision we would render regarding this issue can afford him no relief and would be merely advisory. Consequently, the issue is moot and shall not be reached by this court.

## DISPOSITION

In light of the foregoing, we remand this case to the circuit court of Cook County for the sole purpose of correcting defendant's mittimus as indicated above and affirm the judgment in all other respects.

Affirmed and remanded.

RIZZI and GREIMAN, JJ., concur.